UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| ALEJANDRO FIKES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:11-cv-00034-TWP-WGH |
| | ) | |
| PAUL E. WHITESELL, Indiana State | ) | |
| Police Superintendent, | ) | |
| MITCH DANIELS, State of Indiana, | ) | |
| JEREMY FRANKLIN, | ) | |
| JOHN DOE 1-50, | ) | |
| UNITED STATES GOVERNMENT, | ) | |
| | ) | |
| Defendants. | ) | |

## ENTRY ON MOTION TO DISMISS FIRST AMENDED COMPLAINT

This matter is before the Court on Defendants', Paul E. Whitesell, Mitch Daniels, the State of Indiana, and Trooper Jeremy Franklin ("Trooper Franklin") (collectively, "Defendants"), Motion to Dismiss Plaintiff Alejandro Fikes' ("Plaintiff") First Amended Complaint. This lawsuit stems from a traffic stop in which Trooper Franklin seized $41,320.00 of Plaintiff's "gambling money," which later became the subject of a federal forfeiture. Simply stated, Plaintiff wants his money back.

Plaintiff's First Amended Complaint brings nine causes of action: (1) violations of Indiana Code § 34-24-1-9 and Indiana Code § 35-33-5-5; (2) civil conversion; (3) criminal theft and conversion through the Crime Victims Relief Act; (4) bailment; (5) replevin; (6) violations of 42 U.S.C. § 1983; (7) *respondeat superior*; (8) fraudulent concealment; and (9) motion to set aside federal forfeiture. Defendants essentially make two separate arguments in favor of dismissal: first, the statute of limitations has run on the conversion and §1983 claims and,

second, the remaining claims are not cognizable under Indiana law. For the reasons set forth below, Defendants' motion (Dkt. 19) is **GRANTED** in part and **DENIED** in part.

## I. <u>BACKGROUND</u>

On July 14, 2008, Plaintiff was pulled over by Indiana State Trooper Jeremy Franklin for having tinted windows. Trooper Franklin asked and received consent to search the vehicle; in doing so, the trooper discovered $41,320.00 in cash. Plaintiff told Trooper Franklin that it was gambling money. Presumably, this response raised Trooper Franklin's suspicions, so he called in a canine unit. However, the canines did not detect the presence of drugs. Trooper Franklin then undertook a deeper investigation, confiscating the gambling money and Plaintiff's vehicle for an inventory search. He provided Plaintiff with a receipt for the money and advised Plaintiff that the money would be returned upon completion of the investigation. Ultimately, the vehicle was returned. The cash, on the other hand, was not. To date, Plaintiff has not been charged with a crime.

Unfortunately, Plaintiff misplaced the receipt for the money. Over the next few years, Plaintiff made periodic inquiries to the Indiana State Police about the disposition of the money, but, apparently, these inquires were futile. Plaintiff was told that, in effect, without a receipt or incident number, he was out of luck. In mid-August 2010, Plaintiff found the receipt and hired counsel who began an investigation. On January 19, 2011, Plaintiff, through counsel, learned that the Indiana State Police had transferred the gambling money to a federal agency to initiate a federal forfeiture. This transfer took place without notice and without a court order. According to Plaintiff, the United States then conducted an administrative forfeiture and divided the cash with the State of Indiana. The exact amount doled out to Indiana is currently unknown.

On February 2, 2011, roughly two and a half years after the initial seizure of the money, Plaintiff served Defendants with a tort claim notice by certified mail. On February 18, 2011, Plaintiff filed his initial complaint in state court. After the case was removed to federal court, Plaintiff filed an amended complaint, which added a number of claims and the United States as a defendant.[1] Defendants then filed the present Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD

When reviewing a 12(b)(6) motion, the Court takes all well-pleaded allegations in the complaint as true and draws all inferences in favor of the plaintiff. *Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008) (citations omitted). However, the allegations must "give the defendant fair notice of what the…claim is and the grounds upon which it rests" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)). Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citations omitted). To be facially *plausible*, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

## III. DISCUSSION

As discussed, Defendants' arguments for dismissal are two-pronged. First, Defendants argue that at least three of Plaintiff's claims – civil conversion, § 1983, and conversion through

---

[1] The United States is not a party to the present Motion to Dismiss.

the Crime Victims Relief Act claim – are barred by the operative statutes of limitation and/or Plaintiff's failure to file a timely notice of tort claim. Second, Defendants argue that Plaintiff's remaining claims – replevin, bailment, fraudulent concealment, Indiana Code § 34-24-1-9, Indiana Code § 35-33-5-5, and 18 U.S.C. § 983 – are not viable under Indiana law. These arguments are addressed in turn.

### A.     Violations of Indiana Code § 34-24-1-9 and Indiana Code § 35-33-5-5 (Claim 1)

Plaintiff argues that Defendants violated both of these statutes by failing to secure a turnover order from the state court prior to transferring the seized money to a federal agency as required in order to initiate a federal forfeiture. Plaintiff has some authority that arguably supports this position. *See Martin v. Indiana State Police*, 537 F. Supp. 2d 974, 987 (S.D. Ind. 2008) (under Indiana law, there was no valid transfer of jurisdiction from the state court to federal agency of currency seized under the authority of the state court's search warrant where state court never relinquished its control and did not issue a transfer order). In any event, Defendants argue that these statutes do not provide an independent cause of action. Indeed, the statutes invoked by Plaintiff do not provide an express cause of action, and a private cause of action will only be inferred where a statute imposes a duty for a "particular individual's benefit." *Blanck v. Ind. Dep't of Corrections*, 829 N.E.2d 505, 509 (Ind. 2005). Neither statute fits this latter criterion. Overall, these statutes are merely administrative instructions to law enforcement spelling out the mechanics for dealing with seized property. Thus, in the Court's view, Defendants' argument is correct.

Plaintiff appears to concede that these statutes do not confer a private cause of action for money damages. Nonetheless, citing *Ex parte Edward Young*, 209 U.S. 123 (1908), Plaintiff claims that he is seeking "prospective relief" under "the Court's inherent power to enjoin

4

ongoing violations of the law." (Dkt. 29 at 4.) The Court is not persuaded. First and foremost, the *Ex parte Young* doctrine does not apply where, as here, "the claimed violations are based on state law." *Virginia Office for Protection & Advocacy v. Stewart*, __ U.S. __, 131 S. Ct. 1632, 1646 (2011) (citation omitted). Moreover, a strong argument exists that Plaintiff's requested relief is for retroactive monetary relief, meaning the *Ex Parte Young* doctrine would not apply. *Id.* (*Ex parte Young* does not extend to suits seeking retroactive relief); *see also Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 102-03 (1984). And, as a practical matter, Plaintiff need not avail himself of these statutes, given that he still has a viable conversion claim (assuming it was brought in a timely fashion). For these reasons, Defendants' Motion to Dismiss is **GRANTED** with respect to Plaintiff's claims brought under Ind. Code § 34-24-1-9 and Ind. Code § 35-33-5-5 (Claim 1).

**B.     Statute of Limitations and Notice of Tort Claim (Claims 2, 3, and 6)**

The parties agree that a two year statute of limitations applies to Plaintiff's conversion claim, § 1983 claims, and conversion claim through the Crime Victims Relief Act. *See* Ind. Code § 34-11-2-4 (statute of limitations for conversion is two years); *Prime Mortg. USA, Inc. v. Nichols*, 885 N.E.2d 628, 640 (Ind. Ct. App. 2008) (two-year statute of limitations for conversion through the Crime Victims statute); *Hoagland v. Town of Clear Lake, Ind.*, 415 F.3d 693, 699-700 (7th Cir. 2005) (the two year Indiana statute of limitations for personal injuries applies to § 1983 claims). Further, for an individual to bring a valid tort claim against the state, he must file a tort claim notice within 270 days after the injury. *See* Ind. Code § 34-13-3-6(a) ("a claim against the state is barred unless notice is filed with the attorney general or the state agency involved within two hundred seventy (270) days after the loss occurs.").

Here, Plaintiff's gambling money was seized on July 14, 2008. Well over two years later, Plaintiff filed his notice of tort claim on February 2, 2011 and complaint on February 18, 2011. According to Defendants, the statute of limitations clock began running on the day his property was seized, thus barring all of Plaintiff's claims that have a two year statute of limitations. Specifically, Defendants argue that "[i]n the case of an alleged tort or constitutional violation flowing from a police seizure, the statute of limitations begins to run when the police seize the property, not when an ancillary proceeding, such as forfeiture is conducted." (Dkt. 20 at 5.) Notably, Defendants support this position with Seventh Circuit authority applying Indiana law. *See Campbell v. Chappelow*, 95 F.3d 576, 580 (7th Cir. 1996) (statute of limitations began to run when seizure of property took place).

Defendants also highlight that, under Indiana law, the State had only 180 days from the date of seizure to bring a forfeiture action. Ind. Code § 34-24-1-3(a); *see Ziegler v. State*, 780 N.E.2d 1169, 1170 (Ind. Ct. App. 2003) (statute pertaining to forfeiture actions required state to file its civil forfeiture complaint within 180 days after property was seized). The state did not initiate a civil forfeiture proceeding within this 180-day timeframe. So, assuming *arguendo* that the statute of limitations did not start running on the day of the actual seizure, it nonetheless began running 180 days later. By this date, Defendants argue, Plaintiff should've known that he sustained an injury to his personal property rights.

Although these arguments have some appeal, the Court is not persuaded, particularly given the early procedural posture of this case. The Court is not convinced that the date of seizure, July 14, 2008, is the proper trigger date; according to Plaintiff's allegations, no wrong-doing occurred when the cash was actually seized. Additionally, Defendants' 180-day argument is not a clincher. On this point, it is worth noting that "the 180-day requirement under Indiana

law restricts only the state's entitlement to initiate forfeiture proceedings." *U.S. v. $99,000 U.S. Currency*, 2011 WL 2470665, at *6 (S.D. Ind. June 17, 2011). Thus, even after 180 days had passed, the State was "still permitted to hold the property until either the final disposition of the case or it transferred the property to the federal authorities ...". *Id*. At bottom, the Court believes that it would be premature, and perhaps somewhat arbitrary, to rule that the statute of limitations clock should start running on the date that the state lost the ability to initiate its own forfeiture proceedings.

Plaintiff's position is that the wrongdoing took place "on or after February 24, 2009 when the Defendants elected not to hold the property but to transfer it to a federal agency without a turnover order in violation of state law." (Dkt. 29 at 5.) Moreover, Plaintiff did not learn of this alleged wrongdoing until January 19, 2011; he then filed suit one month later. Again, given the early procedural posture of this case, the Court is unable to pinpoint an exact accrual date for these conversion-based claims. As Plaintiff highlights, Indiana is a discovery rule state, where "the statute of limitations does not begin to run until the Plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." *Estate of Verdak v. Butler University*, 856 N.E.2d 126, 133 (Ind. Ct. App. 2006) (citation and internal quotations omitted). In a similar vein, it is unclear exactly when Plaintiff's conversion-based causes of action came into existence. *See Cooper Industries, LLC v. City of South Bend*, 899 N.E.2d 1274, 1284 (Ind. 2009) ("a statute of limitation does not begin to run against a cause of action before the cause of action exists, i.e., before a judicial remedy is available to the plaintiff") (citation and internal quotations omitted). Accordingly, Defendants' motion to dismiss is **DENIED** with respect to Plaintiff's conversion claim, § 1983 claim, and conversion claim through the Crime Victims Relief Act (Claims 2, 3, and 6). In the

Court's view, a contrary ruling risks jumping the gun. *See Cancer Foundation, Inc. v. Cerberus Capital Management*, 559 F.3d 671, 674-75 ("Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations.").[2]

**C.     Bailment (Claim 4)**

In his bailment claim, Plaintiff alleges that when Trooper Franklin gave him the receipt in exchange for the money, a bailment relationship was formed. Under this bailment relationship, Plaintiff contends, the money would be returned following the investigation. Specifically, "[a] bailment exists when one party entrusts his personal property to another for a specific purpose, after which the property is to be returned." *United Farm Family Ins. Co. v. Riverside Auto Sales*, 753 N.E.2d 681, 684 (Ind. Ct. app. 2001) (citation omitted). A bailment relationship is contractual in nature, based on an express or implied agreement. *Tucker v. Capital City Riggers*, 437 N.E.2d 1048, 1053 (Ind. Ct. App. 1982). Here, there was no express contractual agreement. The question arises: under Indiana law, can a police seizure give rise to an implied bailment relationship?

On this point, other courts have routinely ruled that police seizures do not create bailment relationships. *See, e.g., Alde, S.A. v. United States*, 28 Fed. Cl. 26, 30 (1993) (no implied-in-fact bailment occurred when government seized aircraft, even though Customs Service required that owner pay administrative penalties and file bond, which owner did; "[t]he courts have confronted the problem of implied bailment contracts on a number of occasions. These cases evince a uniform reluctance to find an implied bailment contract in cases similar to the one at hand where plaintiff's property has been seized pursuant to the Government's exercise of its police power.");

---

[2] Notably, given the nature of the Court's ruling, it need not address the applicability of the "continuing wrong" doctrine.

*Scope Enterprises, Ltd. v. United States*, 18 Cl. Ct. 875, 884 (1989) (seizure by Customs Service of money used in unlawful export of military and high technology did not result in bailment agreement). Most importantly, the Seventh Circuit, applying Indiana law, has spoken to this issue. In *Campbell*, 95 F.3d 576, the court rejected the view that the concept of bailment is applicable where state troopers seized the plaintiff's personal property. *Id.* at 579.[3] Overall, this Court believes that a cause of action for bailment is not viable in the context of law enforcement seizures, given their involuntary and unilateral nature. Accordingly, Defendants' Motion to Dismiss is **GRANTED** with respect to Plaintiff's bailment claim (Claim 4).

**D.     Replevin (Claim 5)**

Replevin is a statutory remedy for recovering tangible personal property. Ind. Code § 32-35-2-1. To maintain a replevin action, the property must be: (1) "wrongfully taken or unlawfully detained from the owner or person claiming possession of the property"; or (2) "taken on execution or attachment and claimed by any person other than the defendant." *Id.* At its core, replevin is a possessory action: "the only issue *necessarily* decided in a replevin action is the right to present possession." *State Exchange Bank of Culver v. Teague*, 495 N.E.2d 262, 266 (Ind. Ct. App. 1986) (emphasis in original; citation omitted).

Defendants argue that, under the circumstances, a replevin remedy is unavailable because they were not in possession of the seized money at the time Plaintiff's action was filed. This general position appears to align with hornbook law. *See* 77 C.J.S. Replevin § 11 ("As a general rule money is not the subject of a replevin action, unless it is so marked or labeled as to be capable of identification."). Because Plaintiff's exact tangible cash was transferred to the federal

---

[3] The Court would be remiss not to note that Plaintiff cites non-binding authority that arguably supports his position. *See Melvin v. United States*, 963 F. Supp. 1052 (D. Kansas 1997). However, in the Court's view, *Melvin* is factually distinguishable, as it involved a prison official's failure to safeguard a prisoner's personal property. And even if *Melvin* was on-point, this would not change the Court's ruling. As other courts have recognized, a police seizure is not characterized by mutual assent and agreement, which are prerequisites to the formation of a contractual relationship.

government, Defendants argue, replevin is not an available remedy. In other words, Defendants' view is that *possession* at the time the action is filed is the touchstone of replevin: "Replevin is a remedy only against those in possession of the property demanded." (Dkt. 20 at 2) (emphasis added).

Indeed, this may be the law in some states. Nonetheless, it is unclear if Indiana would embrace this argument under these unique circumstances. On this point, *Lou Leventhal Auto Co., Inc. v. Munns*, 328 N.E.2d 734 (Ind. Ct. App. 1975) is potentially instructive. There, the Indiana Court of Appeals examined whether a replevin action may be brought even though the defendant *no longer has possession of the property at the time the action is filed*. In short, the Court of Appeals held that a cause of action for replevin was still available under the circumstances.

Specifically, in *Munns,* the plaintiff filed a replevin action against a car dealer involving the purchase of a truck. This dispute arose after the dealer (defendant) repossessed plaintiff's truck. *Id*. at 371. In response, the plaintiff initiated a criminal action against it and the state police seized the truck as evidence. *Id*. During the time the police (or, more specifically, a body shop on behalf of the police) had possession of the truck, the plaintiff filed a replevin action against the car dealer and the body shop. *Id*. As a result, the truck was returned to him. *Id*. The case then proceeded to trial and the plaintiff was awarded damages. *Id*.

The Court of Appeals recognized the general rule that "[t]o maintain an action in replevin it has also been necessary to show that the defendant was in actual or constructive possession of the property when the action was commenced." *Id*. at 374. The Court of Appeals acknowledged that the car dealership was not in possession of the vehicle when the plaintiff's action was filed, but nonetheless held that the trial court properly allowed the replevin action to go forward, ruling

10

that damages for wrongful detention or loss of use may still be recovered. *Id*. at 375, 77-78 ("The courts of this State have recognized that a defendant in a replevin action cannot avoid liability by voluntarily transferring the property to a third party."). In doing so, the Court of Appeals highlighted the principle that "a party should be fully compensated for the wrong committed." *Id*. at 378; *see also Romanowski v. Giordano Management Group, LLC*, 896 N.E.2d 558, 562 (Ind. Ct. App. 2008) (citing *Munns* with approval; "[t]his court previously has held that although a defendant may not have possession of the disputed property, damages for wrongful detention or loss of use may still be recovered in a replevin action, if the taking or the detention of the property is shown to be wrongful.").

Given this backdrop, the Court is not persuaded that Defendants' transfer of money to the federal government is fatal to Plaintiff's replevin action. Although "possession is nine-tenths of the law" is a timeless adage, it is not necessarily an accurate statement of the law. This appears particularly true in Indiana, where possession – or lack thereof – is not necessarily dispositive in replevin claims. Accordingly, Defendant's Motion to Dismiss is **DENIED** with respect to Plaintiff's replevin claim (Claim 5).

**E.    Respondeat Superior (Claim 7)**

Plaintiff is correct that Defendants did not challenge any of the *respondeat superior* allegations contained in the First Amended Complaint. Accordingly, Defendants' Motion to Dismiss is **DENIED** with respect to Claim 7.

**F.    Fraudulent Concealment (Claim 8)**

As Defendants correctly note, fraudulent concealment is not an independent cause of action. Instead, it operates "as an equitable device to estop a defendant from asserting a statute of limitations when he has, either by deception or by violation of duty, concealed from the

plaintiff material facts preventing the plaintiff from pursuing a potential cause of action." *Ayers v. State Farm Mut. Auto Ins. Co.*, 558 N.E.2d 831, 833 (Ind. Ct. App. 1990) (citation omitted). Plaintiff seems to acknowledge this, but then argues that this cause of action should have been labeled as "fraud."

For an allegation of fraud to survive, Plaintiff must allege the following: (1) a material representation of past or existing facts which, (2) was false, (3) was made with knowledge or reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) proximately caused injury to the complaining party. *Tru-Cal, Inc. v. Conrad Kacsik Instrument Systems, Inc.*, 905 N.E.2d 40, 44-45 (Ind. Ct. App. 2009) (citation omitted). Further, such allegations must be pled with factual specificity. Fed. R. Civ. P. 9(b) ("In alleging fraud..., a party must state with particularity the circumstances constituting fraud..."). Defendants are correct that Plaintiff has not alleged the requisite "intent to deceive" in order to maintain this action.[4] On this point, Plaintiff only alleges that Defendants' misrepresentations "were intended to induce Plaintiff into believing that he could not take any action to recover his money unless he found his receipt." (Amended Compl. ¶69.) However, in the Court's view, it is unclear if this is in fact a *false* representation. For this reason, Defendants' Motion to Dismiss is **GRANTED** with respect to this count (Claim 8).

G.  **Motion to Set Aside Forfeiture (Claim 9)**

Plaintiff concedes that this cause of action is not directed to Defendants. Instead, it is directed to the United States. Accordingly, Defendants' Motion to Dismiss is **GRANTED** with respect to Claim 9.

---

[4] It is worth noting that "intent" may be alleged generally. Fed. R. Civ. P. 9(b).

## IV. CONCLUSION

For the reasons set forth herein, Defendants' Motion to Dismiss (Dkt. 19) is **GRANTED** with respect to Plaintiff's claims involving violations of Indiana Code § 34-24-1-9 and Indiana Code § 35-33-5-5, bailment, fraud, and the motion to set aside federal forfeiture. Defendants' Motion is **DENIED** as to Plaintiff's claims for conversion, criminal theft and conversion under the Crime Victims Relief Act, replevin, and *respondeat superior*.

SO ORDERED.

Date: 10/20/2011

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Scott Leroy Barnhart
INDIANA OFFICE OF THE ATTORNEY GENERAL
scott.barnhart@atg.in.gov

Jerome J. Charls
jcharls@charlslaw.com

Wade J. Hornbacher
INDIANA ATTORNEY GENERAL
wade.hornbacher@atg.in.gov

Debra G. Richards
UNITED STATES ATTORNEY'S OFFICE
debra.richards@usdoj.gov